J-S69041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHIE E. SMITH | : | |
| | : | |
| Appellant | : | No. 113 EDA 2018 |

Appeal from the Judgment of Sentence June 23, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005488-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHIE E. SMITH | : | |
| | : | |
| Appellant | : | No. 114 EDA 2018 |

Appeal from the Judgment of Sentence June 23, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005489-2013

BEFORE:   SHOGAN, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                **FILED SEPTEMBER 18, 2020**

Appellant, Richie E. Smith, appeals from judgments of sentence imposed

by the Court of Common Pleas of Philadelphia County (trial court) in two

_____

[*] Retired Senior Judge assigned to the Superior Court.

consolidated criminal cases following a jury trial at which he was convicted of rape, aggravated indecent assault, indecent assault, terroristic threats, incest, corruption of a minor, and unlawful contact with a minor.[1]  For the reasons set forth below, we conclude that Appellant's claims of error with respect to one of the cases, CP-51-CR-0005489-2013 (CR-5489-2013), are without merit and therefore affirm the judgment of sentence in that case.  In the other case, CP-51-CR-0005488-2013 (CR-5488-2013), however, we are constrained to conclude that the trial court erred in admitting prior consistent statements of the key witness in that case and that the error was not harmless.  We therefore vacate Appellant's judgment of sentence in CR-5488-2013 and remand for a new trial of that case.

In CR-5489-2013, Appellant was charged with aggravated indecent assault, indecent assault, terroristic threats, corruption of a minor, unlawful contact with a minor, and other offenses committed against C.S., the daughter of his paramour.  The basis of these charges was that Appellant sexually assaulted C.S. on more than one occasion when she was approximately 10 years old, while he was living with her mother and her mother was at work on a night shift.  N.T. Trial, 1/19/17, at 91, 94-100, 102-04.  In these assaults, Appellant also hit and punched C.S. and threatened to "knock [her] head off."  *Id.* at 99, 104-05.  C.S. told her mother about the assaults when she was

---

[1] 18 Pa.C.S. §§ 3121(a)(1), 3125(b), 3126(a)(7), 2706(a)(1), 4302, 6301 (a)(1) (ii), and 6318(a)(1), respectively.

- 2 -

approximately 12 years old, several months after Appellant moved out of their house, when her mother asked her about a post that C.S. had put on Facebook. *Id.* at 107-08, 119.

In CR-5488-2013, Appellant was charged with rape, indecent assault, incest, corruption of a minor, unlawful contact with a minor, and other offenses committed against E.G., his biological daughter. These charges were based on the following facts. E.G. did not live with Appellant, but had visits with him beginning when she was 7 years old. N.T. Trial, 1/19/17, at 147-48. Appellant put E.G.'s hand on his penis over his clothes on one of these visits when she was 11 and fondled her breasts when she was 13. *Id.* at 151-59. In 2012, when E.G. was 15 years old and was visiting Appellant at his house, he raped her. *Id.* at 160-66. E.G. did not tell anyone about the rape or the incidents of inappropriate touching at the time, but told her therapist about the assaults when she was 16. *Id.* at 164-71.

After they told adults about the assaults, both girls were interviewed by Philadelphia Children's Alliance (PCA). N.T. Trial, 1/19/17, at 100-01, 169-70. The girls also underwent physical examinations by Dr. Scribano of Children's Hospital of Philadelphia. *Id.* at 109, 202; N.T. Trial, 1/20/17, at 53, 57-62, 68-69. Both examinations were normal; Dr. Scribano found no evidence of genital or anal trauma or sexually transmitted disease. N.T. Trial, 1/20/17, at 60-63, 69-71. In her PCA interview, C.S. did not say that Appellant put his penis in her when he assaulted her, and in her testimony at Appellant's

preliminary hearing, she testified that Appellant put only his fingers in her vagina. N.T. Trial, 1/19/17, at 105-06.

Between 2013 and 2017, Appellant sought and was granted five continuances, N.T. Trial, 1/23/17, at 69-70, and his jury trial was scheduled to begin on January 17, 2017. On January 16, 2017, the day before trial, the Commonwealth's attorney interviewed C.S. in preparation for trial and C.S. told the Commonwealth's attorney that Appellant had penetrated her with his penis, in addition to his fingers, in the sexual assaults. N.T. Trial, 1/17/17, at 3-5. The Commonwealth's attorney disclosed this information to Appellant's trial counsel immediately after the interview, and the trial court and counsel addressed this issue before jury selection began. *Id.* at 5-49, 51-52, 58-59. Appellant's trial counsel requested that the trial be delayed to give him the opportunity to investigate C.S.'s new accusation. *Id.* at 17-28. The trial court ruled that jury selection would proceed, but the commencement of the trial would be delayed until January 19, 2017 to permit Appellant's trial counsel to prepare written questions to be asked to C.S. and receive answers to those questions and to have an opportunity to interview other fact witnesses regarding the new information. *Id.* at 30-46.

Jury selection began on January 17, 2017 and was completed on January 18, 2017. C.S. was interviewed on January 17, 2017, and Appellant's trial counsel received the answers to the questions that he submitted prior to the opening of court the next day. N.T. Trial, 1/20/17, at 13-17; N.T. Trial,

1/18/17, at 8-9.  At the opening of court on January 18, 2017, before the completion of jury selection, Appellant's trial counsel requested a continuance on the ground that he needed to obtain an expert medical witness to testify that repeated penile penetration would leave some sign of trauma.  N.T. Trial, 1/18/17, at 3-4.  The trial court asked Appellant's counsel whether he knew of any expert that could provide such testimony and counsel admitted that "I don't have a name," but contended that "I'm a defense lawyer. I will find an expert." *Id.* at 4-7.  The trial court denied the motion for a continuance. *Id.* at 3-7.

During jury selection, a number of prospective jurors answered that they or someone close to them had been a victim of a sexual assault.  N.T. Trial, 1/17/17, at 73.  One of these jurors, Juror No. 7, testified that her 13-year-old daughter had been sexually assaulted by a stranger and was examined by the trial court concerning the circumstances and whether that would affect her ability to be fair if selected as a juror. *Id.* at 131-34, 138-40.  Appellant's trial counsel moved to strike Juror No. 7 for cause, and the trial court denied the motion. *Id.* at 140-41.  Appellant's counsel used one of his peremptory challenges to strike Juror No. 7 and exhausted all of his peremptory challenges before the last juror was selected. *Id.* at 141, 273, 277, 279.

At trial, C.S. testified that Appellant put his penis in her vagina in the sexual assaults in addition to putting his fingers in her vagina and that she was assaulted on numerous occasions.   N.T. Trial, 1/19/17, at 95-100, 103-04.

Both the Commonwealth and Appellant questioned C.S. concerning the inconsistency between this testimony and her PCA interview and preliminary hearing testimony, in which she had not said that Appellant put his penis in her vagina and, at the preliminary hearing, testified that the assaults occurred only twice. *Id.* at 100-01, 105-06, 116-27. C.S., who was 16 at the time of trial and was 12 at the time of those prior statements, testified that she did not mention Appellant putting his penis in her vagina in her prior statements because she was uncomfortable and was younger and scared and "wasn't ready to explain what happened." *Id.* at 86, 101, 106, 116-17, 119. Over Appellant's objection, the Commonwealth introduced in evidence and played the videotape of C.S.'s PCA interview. *Id.* at 17-20, 36, 236-37; N.T. Trial, 1/20/17, at 29-30, 39, 119-20.

E.G. testified that Appellant inappropriately touched her when she was 11 and 13 and that he put his penis in her vagina and raped her when she was 15. N.T. Trial, 1/19/17, at 151-66. Appellant challenged E.G.'s credibility on the ground that after the rape she still wanted contact with him and that she accused him of the assaults because he failed to call her on her 16th birthday and told her not to call him anymore. *Id.* at 78-81, 181-87. Over Appellant's objection, E.G., on direct examination, read to the jury two of her diary entries that she made after she told her therapist about the assaults and the Commonwealth introduced those diary entries in evidence. *Id.* at 5-10, 17-20, 36, 172-78; N.T. Trial, 1/20/17, at 119-20. The Commonwealth also

introduced in evidence and played the videotape of E.G.'s PCA interview over Appellant's objection.  N.T. Trial, 1/19/17, at 8-10, 36, 17-20, 236-37; N.T. Trial, 1/20/17, at 42, 119-20.

Dr. Scribano testified to his examinations of C.S. and E.G. and opined as an expert witness in the field of child sexual abuse that the absence of evidence of physical trauma was consistent with their testimony that they were sexually assaulted because studies of sexual assault victims show that most victims examined more than three days after the assault exhibit no signs of physical trauma.  N.T. Trial, 1/20/17, at 56-86, 92-103.  Appellant testified in his own defense and denied that he ever inappropriately touched or sexually assaulted C.S. or E.G.  *Id.* at 151, 179-80.

On January 23, 2017, the jury found Appellant guilty of aggravated indecent assault, indecent assault, terroristic threats, corruption of a minor, and unlawful contact with a minor in CR-5489-2013 and rape, indecent assault, incest, corruption of a minor, and unlawful contact with a minor in CR-5488-2013.  On June 23, 2017, the trial court sentenced Appellant to concurrent aggregate terms of imprisonment of $28^1/_2$ to 57 years' imprisonment in CR-5489-2013 and $27^1/_2$ to 55 years' imprisonment in CR-5488-2013.[2]  On July 3,

---

[2] In CR-5489-2013, the aggregate sentence consisted of concurrent terms of 25 to 50 years for aggravated indecent assault, $3^1/_2$ to 7 years for indecent assault, and 5 to 10 years for unlawful contact with a minor and consecutive terms of 1 to 2 years for terroristic threats and $2^1/_2$ to 5 years for corruption of a minor.  In CR-5488-2013, the aggregate sentence consisted of concurrent

2017, Appellant filed post-sentence motions in both cases, which were denied on November 21, 2017, by operation of law. These timely appeals followed.

Appellant presents three issues for review:

A. Did the lower court abuse it's discretion by denying Appellant's request for a continuance, as the request was based on the Commonwealth's 11th-hour disclosure and the lower court's response was prejudice[d] and sexist?

B. Did the lower court err by giving the Commonwealth complete freedom to introduce prior consistent and inconsistent statements of E.G. and C.S. during each witness's direct examination?

C. Did the lower court err in denying trial counsel's motion to strike a potential juror whose daughter had recently been the victim of a substantially similar crime?

Appellant's Brief at 3. We first address Appellant's first and third issues, which allege error with respect to the trial as a whole and then consider Appellant's second issue, which involves different evidence in the two cases.

With respect to Appellant's first issue, the decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and the denial of a continuance may be reversed only upon a showing that the trial court abused that discretion. **Commonwealth v. Wright**, 961 A.2d 119, 133 (Pa. 2008); **Commonwealth v. Ross**, 57 A.3d 85, 91 (Pa. Super. 2012) (*en banc*).

[A]n abuse of discretion is not merely an error of judgment. Rather, discretion is abused when "the law is overridden or

---

terms of 25 to 50 years for rape, $3^1/_2$ to 7 years for indecent assault, $2^1/_2$ to 5 years for corruption of a minor, 5 to 10 years for unlawful contact with a minor and a consecutive term of $2^1/_2$ to 5 years for incest.

misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record."

*Commonwealth v. Brooks*, 104 A.3d 466, 469 (Pa. 2014) (quoting *Commonwealth v. Randolph*, 873 A.2d 1277 (Pa. 2005)). A defendant seeking reversal based on denial of a continuance must "show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time." *Ross*, 57 A.3d at 91 (quoting *Commonwealth v. Brown*, 505 A.2d 295 (Pa. Super. 1986)).

[A] bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion. … We will not reverse a denial of a motion for continuance in the absence of prejudice.

*Commonwealth v. Antidormi*, 84 A.3d 736, 745-46 (Pa. Super. 2014) (quoting *Ross*) (internal quotation marks omitted).

Appellant has not shown that the trial court abused its discretion in denying his January 18, 2017 motion for a continuance. While Appellant's counsel had a need to investigate C.S.'s new accusation, the trial court gave him additional discovery, the opportunity to have questions answered by C.S., and delayed the start of trial to enable him to obtain that information and do additional factual investigation. N.T. Trial, 1/17/17, at 30-46. Appellant does not contend that he was denied sufficient time for adequate factual investigation of the new accusation.

Rather, the ground for the January 18, 2017 motion for a continuance was Appellant's counsel's claim that he needed additional time to obtain an

expert to respond to Dr. Scribano's opinion that C.S.'s normal physical examination was consistent with the sexual assaults. N.T. Trial, 1/18/17, at 4-7; *see also* Appellant's Brief at 6, 9, 12. Dr. Scribano's opinions and the need for expert testimony to counter those opinions, however, were not new developments that occurred shortly before trial. Appellant's counsel was notified in October 2013, over three years before trial, of Dr. Scribano's opinions that lack of evidence of physical trauma did not negate C.S.'s and E.G.'s accusations. N.T. Trial, 1/23/17, at 54, 57. Because E.G.'s accusation was that Appellant had inserted his penis in her vagina and raped her, Appellant's counsel knew in October 2013 that the Commonwealth was presenting expert testimony that the absence of evidence of physical trauma was consistent with penile penetration. Notwithstanding the fact that he had already had over three years to consult experts and investigate the possibility of obtaining expert testimony on this subject, Appellant's counsel admitted that he did not know of any expert that could offer testimony that C.S.'s new accusation was inconsistent with her physical examination. N.T. Trial, 1/18/17, at 4. Given that Appellant had previously been granted five continuances, that the trial had already been delayed several years, that Appellant's counsel had already had over three years to investigate and find an expert on this issue, and that there was no showing that he would be able to present such testimony if a continuance were granted, the trial court did not abuse its discretion in denying a further continuance.

Moreover, Appellant has not shown that he was prejudiced by the denial of the motion for a continuance. There is nothing in the record that demonstrates that Appellant's counsel would have been able to obtain expert testimony or defend the case differently if a continuance had been granted. Not only did Appellant's counsel not identify any expert that he wished to consult or call as a witness at the time he moved for a continuance, he did not submit anything during trial or in his post-sentence motion, filed six months after trial, identifying any expert witness that he would have called to testify or would have consulted if the trial had been delayed. **Compare Wright**, 961 A.2d at 133 (denial of continuance not ground for reversal where there was no showing that defense experts would have disputed Commonwealth's version of the shooting if they had additional time to review the medical evidence) **with Ross**, 57 A.3d at 93-94 & n.6 (prejudice from denial of continuance shown where one defense expert was still receiving physical evidence from the Commonwealth as trial proceeded and the defense expert who disputed the Commonwealth's expert opinion on the time of the victim's death did not finish his work and provide his opinion to defense counsel until after Commonwealth's expert's testimony).

Appellant's contentions that the trial court based its denial of the continuance on unsupported assumptions concerning studies of sexual assault victims and on prejudice are without merit. Appellant's assertion that there are no such studies is inaccurate. To the contrary, Dr. Scribano in his

testimony identified such studies. N.T. Trial, 1/20/17, at 66, 73-83, 99-103. The trial court's statements on the record at trial demonstrate that it denied the motion not on the basis of bias or prejudice, but because Appellant's counsel had notice long before trial of the expert testimony issue on which he sought the continuance and could not identify an expert that he intended to retain or consult if the continuance was granted and because Appellant had already sought repeated delays of the trial. N.T. Trial, 1/18/17, at 4-6; N.T. Trial, 1/23/17, at 54; N.T. Trial, 1/17/17, at 29-30, 32-34. The court's reference to "mansplaining," made after Appellant's counsel admitted that he had no expert despite having had ample opportunity to evaluate the issue and the possibility of expert testimony, does not make its justifiable denial of a sixth continuance an abuse of discretion. *See Commonwealth v. Abu-Jamal*, 720 A.2d 79, 89-90 (Pa. 1998) (trial court's displays of displeasure and impatience with defendant's counsel by themselves not sufficient to show bias against defendant).

Appellant's third issue, that the trial court erred in not striking a juror for cause, likewise fails. A trial court's decision whether to disqualify a juror for cause is within its sound discretion and will not be reversed in the absence of a palpable abuse of discretion. *Commonwealth v. Clemat*, 218 A.3d 944, 951 (Pa. Super. 2019); *Commonwealth v. Penn*, 132 A.3d 498, 502 (Pa. Super. 2016).

> The test for determining whether a prospective juror should be disqualified is whether he [or she] is willing and able to eliminate

- 12 -

the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor. It must be determined whether any biases or prejudices can be put aside on proper instruction of the court. A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions.

*Clemat*, 218 A.3d at 951 (ellipses omitted, brackets in original) (quoting

*Commonwealth v. Briggs*, 12 A.3d 291 (Pa. 2011)).

The fact a juror has a close relationship with a person who was a victim of a similar crime does not require that the juror be stricken for cause if the juror's testimony demonstrates that she can be fair and impartial notwithstanding that experience. *Commonwealth v. Cox*, 983 A.2d 666, 682-83 (Pa. 2009) (no abuse of discretion in denial of motion to strike juror in capital murder case whose son had been murdered where juror "assured the trial court that she could render a fair and impartial verdict and that her personal tragedy would play no role in her assessment of the case"); *Clemat*, 218 A.3d at 951-52 (no abuse of discretion in denial of motion to strike juror in drug case whose close friend died two weeks earlier from a drug overdose where juror testified without hesitation that it would not affect her ability to be fair and impartial).

The trial court did not abuse its discretion in denying Appellant's motion to strike Juror No. 7 for cause. While Juror No 7's 13-year-old daughter was the victim of a sexual assault a year before this trial and the daughter did not

report the assault until several months after it happened, Juror No 7 testified unequivocally and without hesitation that this would not affect her ability to be fair and impartial. N.T. Trial, 1/17/17, at 132-34, 138-40.

Juror No. 7 testified:

THE COURT: … [Y]ou answered yes when I said do you know anybody or have you, yourself, been the victim of a sexual assault. You said yes.

PROSPECTIVE JUROR NO. 7: I did.

THE COURT: Tell me about that.

PROSPECTIVE JUROR NO. 7: My daughter.

THE COURT: Your daughter?

PROSPECTIVE JUROR NO. 7: Was the victim of a sexual assault.

THE COURT: Okay. Was that perpetrated by someone that she knows? Was she a kid at the time?

PROSPECTIVE JUROR NO. 7: She was.

THE COURT: And it was a stranger?

PROSPECTIVE JUROR NO.7: Yes.

THE COURT: And that was reported to the police?

PROSPECTIVE JUROR NO.7: It was.

THE COURT: And was anyone arrested?

PROSPECTIVE JUROR NO.7: No.

THE COURT: Now, is there - that was how long ago?

PROSPECTIVE JUROR NO. 7: A year ago.

THE COURT: A year ago. So you worked with the Special Victims Unit of the police department, I presume, correct? It was in Philly; you said yes, right?

PROSPECTIVE JUROR NO. 7: It was not in Philadelphia.

THE COURT: Okay. Where was it?

PROSPECTIVE JUROR NO. 7: In Wilmington.

THE COURT: Wilmington.

PROSPECTIVE JUROR NO.7: Delaware.

THE COURT: Okay. And is there anything about that - how old was your daughter at the time?

PROSPECTIVE JUROR NO. 7: Thirteen.

THE COURT: Okay. Is there anything about going through that experience with her, would that impact your ability to be fair in this case if you're selected?

PROSPECTIVE JUROR NO. 7: No.

N.T. Trial, 1/17/17, at 132-34. In addition, after further questioning on other subjects, Juror No. 7 reconfirmed that she could be fair and impartial:

THE COURT: And is there any reason you would not be a fair juror if you were selected?

PROSPECTIVE JUROR NO. 7: No.

*Id.* at 138.

The trial court concluded, based on Juror No. 7's answers and its observation of her demeanor, that Juror No. 7 would be able to be fair and impartial despite the crime against her daughter. N.T. Trial, 1/17/17, at 140; Trial Court Opinion at 8. The trial court's denial of Appellant's motion to strike

this juror for cause was therefore not an abuse of discretion and does not constitute grounds for reversal. **Cox**, 983 A.2d at 682-83; **Clemat**, 218 A.3d at 951-52.[3]

In his second issue, Appellant argues that the trial court erred in admitting certain prior statements of C.S. and E.G. in evidence and permitting the Commonwealth to use their prior statements on direct examination. The admissibility of prior consistent statements and prior inconsistent statements is governed by Pennsylvania Rule of Evidence 613, which provides in relevant part as follows:

> (a) Witness's Prior Inconsistent Statement to Impeach. A witness may be examined concerning a prior inconsistent statement made by the witness to impeach the witness's credibility. …
>
> \*       \*       \*
>
> (c) Witness's Prior Consistent Statement to Rehabilitate. Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:

---

[3] The Commonwealth also argues that the denial of Appellant's motion to strike was harmless because Appellant used a peremptory challenge to strike Juror No. 7 and she therefore was not selected to serve on the jury. That argument is without merit. Where a defendant is forced to use one of his peremptory challenges to strike a juror who should have been excused for cause and exhausts his peremptory challenges before the jury is seated, the failure to strike that juror for cause is reversible error. **Penn**, 132 A.3d at 505. Here, Appellant exhausted his peremptory challenges before all the jurors were selected. We therefore affirm on this issue solely on the ground that the trial court did not abuse its discretion in denying the motion to strike.

(1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or

(2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(a), (c).

In CR-5489-2013, Appellant contends that the videotape of C.S.'s PCA interview was not admissible under Rule 613 and that the trial court also erred in permitting the Commonwealth to question her concerning her PCA interview and her preliminary hearing testimony on direct examination.[4] Neither of these arguments is meritorious.

C.S.'s PCA interview was both inconsistent and consistent with her trial testimony. It was consistent with her testimony that Appellant sexually assaulted her and hit and threatened her and her testimony concerning the circumstances in which the sexual assaults occurred, but it differed from her trial testimony in other respects, including whether Appellant used his penis in the assaults. The Commonwealth introduced the videotape of the PCA interview to support C.S.'s testimony after Appellant's counsel cross-examined her concerning the inconsistency between her trial testimony and her preliminary hearing testimony and PCA interview. N.T. Trial, 1/19/17, at 118-26; N.T. Trial, 1/20/17, at 29-30, 39. In that cross-examination, Appellant's

_____

[4] The Commonwealth did not introduce the preliminary hearing transcript in evidence.

counsel specifically asked C.S. whether she had "lied" in the PCA interview. N.T. Trial, 1/19/17, at 124. We therefore examine whether the videotape of C.S.'s PCA interview was admissible as a prior consistent statement to rehabilitate her testimony under Rule 613(c).

C.S.'s PCA interview was not admissible under Rule 613(c)(1). A prior consistent statement, including the videotape of a child sex abuse victim's forensic interview, is admissible under Rule 613(c)(1) only where the statement was made before the motive to lie or reason for claimed inaccuracy of the witness's testimony arose. **Commonwealth v. Bond**, 190 A.3d 664, 669-670 (Pa. Super. 2018); **see also** Pa.R.E. 613(c)(1) (requiring that "the statement was made before that which has been charged existed or arose"). There was no claim by Appellant that C.S.'s memory was faulty or she had a motive to lie that arose after her initial accusation and the PCA interview.

C.S.'s PCA interview, however, was admissible under Rule 613(c)(2). Rule 613(c)(2) has no requirement that the prior statement be made before a motive to fabricate. **Commonwealth v. Harris**, 852 A.2d 1168, 1176 (Pa. 2004). Rather it provides that a prior consistent statement is admissible to rehabilitate a witness's testimony where the opposing party has charged that the witness "made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation." Pa.R.E. 613(c)(2); **see also** Comment to Pa.R.E. 613 ("Pa.R.E. 613(c)(2) … is based on the premise that when an attempt has been made to

- 18 -

impeach a witness with an alleged prior inconsistent statement, a statement consistent with the witness's testimony should be admissible to rehabilitate the witness if it supports the witness's denial or explanation of the alleged inconsistent statement").  The videotape of a child's forensic interview is admissible under Rule 613(c)(2) where the defendant has impeached the child with a prior inconsistent statement, the child has given an explanation of the reason for inconsistent statement in her testimony at trial, and the videotape of the forensic interview supports that explanation. ***Commonwealth v. Lively***, 231 A.3d 1003, 1008-09 (Pa. Super. 2020).

Here, Appellant accused C.S. of giving an inconsistent version of the sexual assaults in her PCA interview and C.S. had explained the inconsistency, testifying that she did not say that Appellant used his penis because she "didn't feel comfortable talking to [the interviewer]" and "I didn't know how to explain it."  N.T. Trial, 1/19/17, at 101, 106, 121, 124.  The videotape of the PCA interview supported this explanation, as it showed C.S.'s discomfort when she was asked about the details of what Appellant did to her.  Trial Court Opinion at 11.  It was therefore admissible to support C.S.'s explanation of the inconsistent statement.  Pa.R.E. 613(c)(2); ***Lively***, 231 A.3d at 1008-09.

Appellant's contention that the trial court erred in permitting the Commonwealth to address C.S.'s prior inconsistent statements in its direct examination of her is also without merit.  It is within the trial court's discretion to permit a witness to address prior statements on direct examination where

it is clear in advance of direct examination that the defendant intends to impeach the witness with a prior inconsistent statement. ***Commonwealth v. Cook***, 952 A.2d 594, 625-26 (Pa. 2008); ***Commonwealth v. J. Smith***, 540 A.2d 246, 258 (Pa. 1988).

It was clear from Appellant's counsel's opening statement and even before the trial started that Appellant intended to impeach C.S. with her inconsistent statements in her PCA interview and preliminary hearing testimony and that this attack on her credibility would be Appellant's primary defense in CR-5489-2013. N.T. Trial, 1/17/17, at 20-22, 31; N.T. Trial, 1/19/17, at 74-77. Indeed, Appellant's counsel accused C.S. of perjury in his opening statement. N.T. Trial, 1/19/17, at 77. The Commonwealth in its direct examination of C.S. did not bring out any content of these prior statements other than the inconsistencies between the statements and her testimony and her explanation of the reason for the inconsistencies. ***Id.*** at 100-01, 105-06, 116-17. Because it was clear that Appellant intended to impeach C.S. with her PCA interview and preliminary hearing testimony, it was within the trial court's discretion to permit this limited examination concerning her PCA interview and preliminary hearing testimony prior to cross-examination.

Moreover, any claim of error concerning the Commonwealth's direct examination on the prior statements was waived by Appellant. While Appellant timely objected to the admission of the videotape of PCA, he did not object to any of the Commonwealth's direct examination of C.S. concerning the PCA

interview and preliminary hearing testimony. *See* N.T. Trial, 1/19/17, at 100-01, 105-06, 116-17. Appellant objected only once during C.S.'s direct examination, to a question concerning who was present when the Commonwealth's attorney spoke with her just before trial. *Id.* at 85-117.

In CR-5488-2013, Appellant argues that the trial court committed reversible error in permitting the reading of two of E.G.'s diary entries in her direct examination and admitting in evidence those diary entries and the videotape of her PCA interview. We agree.

Both E.G.'s diary entries and the videotape of her PCA interview were prior consistent statements. Appellant asserted at trial that E.G. accused him of the rape and inappropriate touching because she was upset over his failure to call her on her 16th birthday and his telling her not to call him. N.T. Trial, 1/19/17, at 78-81, 182-86. The two diary entries and the PCA interview, however, were both subsequent to those events. Trial Court Opinion at 10; N.T. Trial, 1/19/17, at 172-78. As was discussed above, a prior consistent statement is admissible under Rule 613(c)(1) to rebut a charge of fabrication only where the statement was made before the motive to fabricate arose. Pa.R.E. 613(c)(1); *Bond*, 190 A.3d at 669-670. Because they do not pre-date E.G.'s alleged motive to fabricate, neither the diary entries nor the videotape

of E.G.'s PCA interview were admissible under Rule 613(c)(1). ***Bond***, 190 A.3d at 669-670.[5]

Unlike the videotape of C.S's PCA interview, the diary entries and the videotape of E.G.'s PCA interview were also not admissible under Rule 613(c)(2). Although Rule 613(c)(2) does not require that the prior consistent statement pre-date the motive to fabricate or another particular event, ***Harris***, 852 A.2d at 1176, it applies only where the opposing party has claimed that the witness "made a prior inconsistent statement." Pa.R.E. 613(c)(2). In addition, Rule 613(c)(2) requires that the witness have denied or explained the prior inconsistent statement and that the consistent statement support the witness's denial or explanation. ***Id.*** Here, there was no claim that E.G. had made any inconsistent statements that Appellant did not rape or inappropriately touch her or any inconsistent statements concerning what he did in those assaults, and no claim that she denied or explained a prior inconsistent statement. N.T. Trial, 1/19/17, at 5-6, 78; N.T. Trial, 1/23/17, at 110, 112. The fact that Appellant argued that E.G. had a motive to fabricate her accusation does not constitute a charge of a prior inconsistent statement and does not make her diary entries or the videotape of her interview admissible as an explanation or denial of a prior inconsistent statement. ***See***

---

[5] Indeed, the trial court concedes that the diary entries and the videotape of E.G.'s PCA interview are not admissible under Rule 613(c)(1) under this Court's opinion in ***Bond***, which was decided after this 2017 trial. Trial Court Opinion at 9-10.

- 22 -

***Bond***, 190 A.3d at 669-670 (rejecting argument that prior consistent statement was admissible under Rule 613(c)(2) where defendant's claim was that child witness had fabricated the accusations from the outset and child witness had not explained or denied prior inconsistent statement).[6]

The trial court concluded, and the Commonwealth also argues, that the admission of the diary entries and the videotape of E.G.'s PCA interview can be upheld under Pennsylvania Rule of Evidence 106 and that even if erroneous, the error was harmless. Neither of these alternative grounds, however, can sustain the judgment in CR-5488-2013.

Rule 106 provides:

> **If a party introduces all or part of a writing or recorded statement**, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time.

Pa.R.E. 106 (emphasis added). The purpose of this Rule "is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context." Comment to Pa.R.E. 106. Thus, it is a prerequisite for

---

[6] The Commonwealth argues that the diary entries and videotaped PCA interview are admissible under ***Commonwealth v. Willis***, 552 A.2d 682 (Pa. Super. 1988) (*en banc* plurality opinion). Appellee's Brief at 26-27. That contention is without merit. To the extent that it holds the prior consistent statements are admissible on a basis outside of Rule 613, ***Willis*** has been superseded by Rule 613 and 42 Pa.C.S. § 5985.1 and is no longer good law, ***Bond***, 190 A.3d at 669-70 & n.4, a fact that the Commonwealth neglects to acknowledge in its brief.

admissibility under Rule 106 that the opposing party have introduced a document that the evidence in question explains or puts in context.

The diary entries that the Commonwealth put in evidence were not introduced to respond to or explain any writing or recorded statement that Appellant introduced at trial or any characterization of a writing or recorded statement asserted by Appellant. To the contrary, the Commonwealth introduced the diary entries at the outset of the case in its opening statement and in its direct examination of E.G., before Appellant had put on any evidence or questioned any witness concerning E.G.'s accusations. N.T. Trial, 1/19/17, at 57-60, 71, 172-79.

Moreover, it was clear from the start of the trial that there was no basis to introduce the diary entries or the videotape of E.G.'s PCA interview to respond or place in context evidence introduced by Appellant. The only evidence introduced by Appellant that the trial court and the Commonwealth contend justified admission of this evidence under Rule 106 was E.G.'s December 17, 2012 diary entry. Trial Court Opinion at 11-13; Appellee's Brief at 30. Although Appellant introduced the December 2012 diary entry in evidence after the Commonwealth put the two diary entries before the jury, Appellant's counsel made it clear that he did not intend to introduce or use that December 2012 diary entry or any part of E.G.'s diary unless the Commonwealth was permitted to introduce in evidence the two diary entries.

N.T., 1/19/17, at 25-29. Prior to the Commonwealth's opening statement, Appellant's counsel stated:

> Your Honor, since that is your ruling that the diary can come in and -- that the d[ia]ry can come in, that is going to -- the only way, then, for me to try this case is also to put the diary in, parts of the diary. But I just want it clear on the record, that I'm only doing that because Your Honor has let other parts of the diary in.

*Id.* at 25. Because Appellant's introduction of the December 2012 diary entry occurred after and was caused by the admission of the Commonwealth's diary evidence, it cannot provide a basis for sustaining the admission of that evidence under Rule 106.[7]

We also conclude that the admission of diary entries and the videotape of E.G.'s PCA interview cannot be held to be harmless error. A judgment can be sustained despite the erroneous admission of evidence if the error could not have contributed to the verdict. *Commonwealth v. Poplawski*, 130 A.3d 697, 716 (Pa. 2015); *Commonwealth v. Radecki*, 180 A.3d 441, 461 (Pa. Super. 2018). An error may be harmless where the evidence in question did not prejudice the defendant or any prejudice was *de minimis*, where the evidence in question was cumulative of other, substantially similar evidence that was properly admitted, or where the properly admitted and uncontradicted

---

[7] The Commonwealth's contention that Appellant waived his claim of error concerning the admission of the diary entries and PCA interview videotape likewise misstates the record. Contrary to the Commonwealth's assertions, Appellee's Brief at 21-22, the argument concerning the admissibility of this evidence was transcribed and is in the record. *See* N.T., 1/19/17, at 5-10, 16-20.

evidence of guilt was so overwhelming and the prejudicial effect was so insignificant by comparison that the error could not have contributed to the verdict. *Poplawski*, 130 A.3d at 716; *Commonwealth v. Taylor*, 209 A.3d 444, 450 (Pa. Super. 2019); *Radecki*, 180 A.3d at 461. An error, however, cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction. *Poplawski*, 130 A.3d at 716; *Taylor*, 209 A.3d at 450; *Radecki*, 180 A.3d at 461.

> Harmless error exists where the appellate court is convinced beyond a reasonable doubt that the erroneously admitted evidence could not have contributed to the verdict. If there is a reasonable probability that an error may have contributed to the verdict, the error is not harmless.

*Taylor*, 209 A.3d at 450 (quoting *Commonwealth v. Brennan*, 696 A.2d 1201 (Pa. Super. 1997)).

Here, E.G.'s diary entries and the videotape of her PCA interview were not cumulative of substantially similar, properly admitted evidence. No other prior statements by E.G. were admitted in evidence. This was also not a case where the undisputed evidence of guilt was overwhelming. The key evidence of Appellant's guilt in this case was E.G.'s testimony and it was disputed by Appellant, who testified and denied that the events to which E.G. testified occurred.

Nor can we say that the diary entries and PCA videotape did not prejudice Appellant or that any prejudice was *de minimis*. This evidence was not merely admitted at trial, it was emphasized to the jury by the Commonwealth. The

Commonwealth argued E.G.'s diary entries and the videotape of her PCA interview as important evidence in both its opening statement and its closing argument. N.T. Trial, 1/19/17, at 57-60, 71; N.T. Trial, 1/23/17, at 110-12, 116, 126-27. Indeed, the Commonwealth began its opening statement by reading one of the diary entries. N.T. Trial, 1/19/17, at 57-58.

The Commonwealth's case in CR-5488-2013 depended on the credibility of E.G.'s testimony and the Commonwealth argued to the jury that the diary entries and videotape of her PCA interview showed that her testimony was credible. N.T. Trial, 1/23/17, at 110-12, 116. With respect to the diary entries, the Commonwealth specifically argued to the jury:

> This diary tells you what happened. It tells you why [E.G.] didn't tell, these behavior changes, the self blame, the consistent statements in this diary. This is all corroboration.

*Id.* at 116. The Commonwealth also asked that jury in evaluating E.G.'s testimony "reflect on her PCA video" and "recall those silent tears that fell when she described being vaginally raped," and pointed out that E.G.'s statements in the PCA interview were consistent with her trial testimony. *Id.* at 110-12. Given the emphasis that the Commonwealth placed on E.G.'s diary entries and the videotape of her PCA interview, we cannot conclude beyond a reasonable doubt that the admission of that evidence could not have contributed to the jury's guilty verdicts in CR-5488-2013.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a continuance and his motion

- 27 -

to strike a juror for cause and that it did not err in its admission of the videotape of C.S.'s PCA interview and in allowing the Commonwealth question C.S. on direct examination concerning her prior statements. Accordingly, we affirm the judgment of sentence in CR-5489-2013. Because we conclude that the trial court did err in admitting E.G.'s diary entries and the videotape of her PCA interview and that those errors were not harmless in CR-5488-2013, we vacate the judgment of sentence in that case and remand that case for a new trial.

Judgment of sentence in CR-5489-2013 affirmed. Judgment of sentence in CR-5488-2013 vacated and case remanded for new trial. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/20