J-S22045-19

2019 PA Super 147

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                              :  PENNSYLVANIA
                                              :
            v.                               :
                                              :
SARAH E. TAYLOR                       :
                                              :
          Appellant                :  No. 715 MDA 2018

Appeal from the Judgment of Sentence February 28, 2018
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003668-2015

BEFORE:  SHOGAN, J., DUBOW, J., and PELLEGRINI*, J.

OPINION BY PELLEGRINI, J.:                    **FILED MAY 06, 2019**

      Sarah E. Taylor (Taylor) appeals from the judgment of sentence entered on February 28, 2018, in the Court of Common Pleas of York County following her convictions of driving under the influence of drugs (DUI) and endangering the welfare of a child (EWOC).[1]  As to the EWOC count, Taylor was sentenced to a prison term of six to 12 months.  As to the DUI count, she received an intermediate sentence which included a concurrent prison term of six months, followed by six months of house arrest.  On appeal, she argues that the trial court erred in excluding a portion of her expert witness's testimony.  We find

———————————————————

*  Retired Senior Judge assigned to the Superior Court.

[1] **See** 75 Pa.C.S. § 3802(d)(2) (DUI based on use of a controlled substance); 18 Pa.C.S. § 4304 (endangering welfare of a child).

merit in her claim, vacate the judgment of sentence, and remand the case for a new trial on all counts.

## I.

The pertinent facts in this appeal are undisputed. Moments prior to the subject accident, Taylor was driving her car about 20 miles per hour over the speed limit. Her 18-month-old child was secured in a car seat. When the traffic light turned red, Taylor had to break abruptly and she nearly rear-ended a stopped vehicle in front of her. A few seconds after the light turned green, Taylor rapidly accelerated her car over a nearby curb and crashed into a utility pole located about 100 feet from the road.

Another motorist who saw the accident occur pulled over next to Taylor's car and approached on foot to offer help. Taylor also got out of her car and told the motorist that she was not injured. Her child was also unharmed. While speaking with the motorist, Taylor attempted to shut her car door, but the motorist stopped it from shutting because it could have hit the child's outstretched arm.

Officer Joshua Crimmel arrived at the scene of the accident a few minutes later. He observed that Taylor had bloodshot eyes and slurred speech, but she did not smell of alcohol. She also appeared to be confused and very tired. The officer had Taylor perform two standard field sobriety tests – walking in a straight line and walking and turning 180 degrees. According to the officer, Taylor performed poorly on the tests due to trouble

with balancing herself and following his directions. She repeatedly swayed her body, used her arms to keep steady, and started the tests before being prompted to do so.

The officer arrested Taylor on suspicion of DUI and EWOC. While in custody, she admitted to taking Adderall and Xanax, but could not say the amounts or how long before the accident they had been ingested. She denied having any injuries or medical conditions that could have affected her ability to operate a motor vehicle. The Commonwealth did not allege that Taylor was impaired by alcohol and no blood test result was admitted into evidence. Taylor declined medical treatment and she bore no trace of serious physical injury.

At trial, a central point of dispute as to the DUI and EWOC charges was whether Taylor was impaired by a controlled substance at the time she crashed her car. The Commonwealth relied heavily on the arresting officer's testimony about Taylor's accident and how she performed on the field sobriety tests. The officer testified at length regarding his expertise in administering those exercises. Other than describing the scene of the car accident, almost all of the officer's testimony was focused on how poorly Taylor performed on the tests. **_He testified that Taylor's performance indicated impairment due to drug use_**.

The defense attributed Taylor's poor performance to a possible head injury from the accident. The defense attempted to rebut the officer's

testimony with the opinion of its own witness, Dr. Lawrence Guzzardi, a medical toxicologist and physician. This witness planned to testify, in part, that there is no scientific basis to rely on field sobriety tests to detect drug impairment because they have only been validated to reveal intoxication from alcohol.

In its 1925(a) opinion, the trial court summarized Dr. Guzzardi's qualifications:

> Since 2009, he has limited his practice to forensic toxicology, testifying about emergency medicine and toxicology. The doctor has lectured on DUI and field sobriety testing and about drug recognition experts. And he stated that he has published on field sobriety testing. Dr. Guzzardi has reviewed the literature on field sobriety testing and drug recognition experts in order to teach on these subjects. Dr. Guzzardi estimated that he has testified approximately ten times in York County about field sobriety testing.
>
> On cross-examination, Dr. Guzzardi testified that he never took standardized field sobriety testing, nor had any of the subject - matter training that officers have. Dr. Guzzardi has only read the publications on the topic. As for the drug recognition expert training, Dr. Guzzardi has not taken it. Despite his background of medical training and neurologic training, Dr. Guzzardi is not certified to give field sobriety tests.
>
> [On re-direct], Dr. Guzzardi stated that he has looked over the validation studies for standardized field sobriety tests, he has written about the reliability and the neurological issues involved with those tests, that he is familiar with the scientific accuracy of those tests, and that he has lectured on the topic.

Trial Court Opinion, 12/17/18, at 7-8 (emphasis added, citations omitted).

The trial court qualified Dr. Guzzardi as an expert in toxicology and the scientific basis for field sobriety tests. *See* Trial Transcript, 1/11/18, at 153-

- 4 -

Dr. Guzzardi testified without objection about how the exercises are conducted and how a person's blood-alcohol level may be correlated to performance on them. He also testified that he had reviewed Taylor's medical history and confirmed that she had been prescribed Xanax and Adderall. He noted that after using them as directed by a physician for 30 days, the medications should have little to no side effects. Taylor had been prescribed the medication for over 30 days prior to the accident, but there was no evidence regarding what dosages she took.

As to the field sobriety tests, however, the trial court sustained the Commonwealth's objection to Dr. Guzzardi's testimony about their utility for detecting drug impairment:

> **Defense Counsel**: Am I correct that [field sobriety tests] were constructed to determine blood alcohol content.
>
> **Dr. Guzzardi**: Yes. In fact -
>
> **Commonwealth**: I would object, Your Honor.
>
> **Trial court**: I think – let's get to the point here. We're sort of all over the place. Ask the question he's been called as an expert on, and let's move ahead. I'm not so interested in what happened twenty years ago.
>
> **Defense Counsel**: So, am I correct that these tests are made to check blood alcohol?
>
> **Dr. Guzzardi**: They were determined - they were determined to do blood alcohol . . .
>
> **Commonwealth**: Objection.
>
> **Trial court**: I am going to sustain that objection.

**Defense Counsel**: To your knowledge, have these studies ever been validated for drug impairment?

**Dr. Guzzardi**: They have never been validated for drug –

**Commonwealth**: Objection again, out of the scope of expertise.

**Trial court**: I will sustain the objection.

Trial Transcript, 1/11/18, at 162-65.

The jury found Taylor guilty of DUI and EWOC and she was sentenced as outlined above. Her post-sentence motions for relief were denied. The trial court stated in its 1925(a) opinion that exclusion was proper because Dr. Guzzardi did not qualify as "an expert on field sobriety testing." Rule 1925(a) Opinion, 12/17/18, at 15. The trial court emphasized that Dr. Guzzardi's lack of practical experience precluded him from opining on "the methodology used to construct standardized field sobriety testing procedures." *Id*.

The trial court stated in the alternative that even if Dr. Guzzardi indeed qualified as an expert in that area, any prejudice to Taylor was trivial due to the testimony he was permitted to give about how drugs and alcohol may affect a person's body. *Id*. at 16. Further, the trial court found any error to be harmless because Taylor's pre-accident driving and post-accident behavior were so suggestive of drug impairment that Dr. Guzzardi's excluded testimony would have had no effect on the trial's outcome. *Id*. at 17.

In her appeal, Taylor asserts a single issue[2] for our consideration:

Whether, at Sarah Taylor's trial on charges based on impairment by controlled substances, the trial court erred in barring defense expert testimony that field sobriety testing, while validated to detect blood alcohol concentration, had not been validated to determine drug impairment.

Appellant's Brief, at 4. Taylor requests a new trial as to both the DUI and EWOC counts.

## II.

First, the trial court erred in declining to qualify Dr. Guzzardi as an expert in the methodology behind standard field sobriety tests. The witness should have been permitted to testify that they have never been scientifically validated as reliable indicators of drug impairment.[3]

---

[2] Taylor had asserted two additional grounds for relief in her Statement of Issues Complained of on Appeal, but she presented only this one issue in her brief. Appellant's Brief, at 4.

[3] This Court recently summarized the applicable standard of review as follows:

"'[D]ecisions regarding admission of expert testimony, like other evidentiary decisions, are within the sound discretion of the trial court' and '[w]e may reverse only if we find an abuse of discretion or error of law.'" **Hyrcza v. West Penn Allegheny Health Sys., Inc.**, 978 A.2d 961, 972 (Pa. Super. 2009) (quoting **Smith v. Paoli Memorial Hosp.**, 885 A.2d 1012, 1016 (Pa. Super. 2005)). "The trial court abuses its discretion when it misapplies the law or when a manifestly unreasonable, biased or prejudiced result is reached." **Girard Trust Bank v. Remick**, 258 A.2d 882 (Pa. 1969). Additionally, "for such evidentiary ruling to constitute reversible error, it must have been harmful or prejudicial to the complaining party. A party suffers prejudice when the trial court's

The basis for the trial court's ruling was that Dr. Guzzardi lacked the **_practical_** experience necessary for qualification as an expert on the methodology of field sobriety tests. That is, the trial court found it significant that Dr. Guzzardi had never received training on how to administer the tests and had never himself performed them.

But whether field sobriety tests have been validated has nothing to do with practical experience. The rules of evidence do not require a witness to have hands-on skills in a given area in order to testify as an expert on its theoretical aspects. Rather, a witness who is "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if their knowledge is "beyond that possessed by the average layperson," the knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue," and "the expert's methodology is generally accepted in the relevant field." Pa.R.E. 702.

Courts must apply a liberal standard when determining if a witness qualifies as an expert in a particular area of study. **_See Miller v. Brass Rail Tavern, Inc._**, 664 A.2d 525, 528 (Pa. 1995). "The test to be applied when qualifying a witness 'is whether the witness has _any_ reasonable pretension to

---

error could have affected the verdict." [**_Reott v. Asia Trend_**, 7 A.3d 830, 839 (Pa. Super. 2010)].

**_Wright v. Residence Inn by Marriott, Inc._**, No. 3607 EDA 2017 (Pa. Super. April 9, 2019) (some citations omitted).

specialized knowledge on the subject under investigation.'" ***Wright v. Residence Inn by Marriott, Inc.***, No. 3607 EDA 2017 (Pa. Super. April 9, 2019) (citing ***id.***) (emphasis in original). The witness need not possess "all of the knowledge in a given field" but must only "possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine in view of the expert's particular credentials." ***Id.***

Here, Dr. Guzzardi was going to testify that field sobriety tests were developed to detect alcohol intoxication and that they had never been validated as indicators of impairment due to drug use. He would have derived this opinion from years of rigorous scholarship. The trial court noted that Dr. Guzzardi had:

- "lectured on DUI and field sobriety testing and about drug recognition experts,"

- "published on field sobriety testing . . . [and had] reviewed the literature on field sobriety testing and drug recognition experts in order to teach on these subjects,"

- "testified approximately ten times in York County about field sobriety testing,"

- "looked over the validation studies for standardized field sobriety tests," and

- "written about the reliability and the neurological issues involved with those tests."

Trial Court Opinion, 12/17/18, at 7-8.

The Commonwealth did not dispute any of these qualifications. Clearly, Dr. Guzzardi had a reasonable pretension to knowledge about whether sobriety tests have been scientifically validated to detect drug impairment. This was within the course of "knowledge, intelligence, and experience," even if he had not personally administered sobriety exercises as a police offer would in the field. The Commonwealth could have challenged the weight of Dr. Guzzardi's testimony based on any relevant limits of his expertise, but there was no basis for the opinion to be completely excluded. The trier of fact should have been permitted to weigh the expert's opinion against the Commonwealth's evidence of Taylor's guilt.

**III.**

Since the trial court erred in precluding the testimony regarding the extent to which sobriety tests may reliably be used to detect drug impairment, it is necessary to determine whether the error now warrants relief. In this analysis, the order on review must be vacated to correct the error unless we are "convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Story,* 383 A.2d 155, 162 (Pa. 1978). Error may only be considered harmless where:

> (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Williams,* 573 A.2d 536, 538–39 (1990) (citing *Story,* 383 A.2d at 162). "Harmless error exists where the appellate court is convinced beyond a reasonable doubt that the erroneously admitted evidence could not have contributed to the verdict. If there is a reasonable probability that an error may have contributed to the verdict, the error is not harmless." *Commonwealth v. Brennan,* 696 A.2d 1201, 1203 (Pa. Super. 1997) (internal citations omitted).

The exclusion of Dr. Guzzardi's testimony was not harmless beyond a reasonable doubt. At trial, the Commonwealth sought to prove that Taylor was *impaired by drugs* at the time she crashed her vehicle. No blood test result was admitted into evidence, so the jury had to determine whether Taylor was impaired by drugs based solely on her conduct. The Commonwealth's key witness was the arresting officer who testified that he could detect Taylor's alleged drug impairment from her poor performance on field sobriety tests. The officer's opinion ruled out Taylor's only theory of innocence – that she performed badly not because of drug use, but due to head injuries sustained in the accident.

The source of Taylor's impairment was *the* question for the jury to decide at trial. If the jury accepted the officer's opinion on Taylor's drug use, it could have found that she committed the offense of DUI, of which

impairment is a necessary element.[4]  Further, although impairment is not an element of child endangerment, the jury could have relied on evidence of Taylor's alleged impairment to conclude that by knowingly taking drugs, she placed her child in harm's way, in violation of her duty of care.[5]

Dr. Guzzardi would have opined that field sobriety tests are not scientifically proven methods of detecting drug impairment.  If admitted into evidence and accepted by the jury, this expert opinion would have rebutted the officer's conclusion that Taylor was impaired by drugs.  It was for the jury to weigh that evidence, but it never got the chance.  ***See Commonwealth v. Sanchez***, 82 A.3d 943, 972 (Pa. 2013) ("[I]t is the fact-finder's province to weigh the evidence, determine the credibility of witnesses, and believe all, part, or none of the evidence submitted.").  As a result of the trial court's

---

[4] The pertinent elements of the offense are as follows:

> **(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> > (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(d)(2).

[5] A parent may commit the offense if she "knowingly endangers the welfare of the child by violating a duty of care, protection or support."  18 Pa.C.S. § 4304(a)(1).

error, the arresting officer's opinion about Taylor's drug impairment was unchallenged.

Under the circumstances of this case, the excluded testimony went to the heart of a central jury question. The error in excluding Dr. Guzzardi's testimony therefore resulted in more than de minimus prejudice, and the excluded testimony was not cumulative. The trial court's error was not harmless beyond a reasonable doubt and, as a result, the judgment of sentence cannot stand.

Judgment of sentence vacated. Case remanded for a new trial on the counts of driving under the influence and endangering the welfare of a child. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/06/2019