J-S37005-22

2023 PA SUPER 46

| | | |
|---|---|---|
| CEDRIC GALETTE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NJ TRANSIT AND JULIE E. MCCREY | : | |
| | : | No. 2210 EDA 2021 |
| APPEAL OF: NJ TRANSIT | : | |

Appeal from the Order Entered September 27, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 2008000610

BEFORE: BOWES, J., LAZARUS, J., and OLSON, J.

OPINION BY BOWES, J.: **FILED MARCH 21, 2023**

New Jersey Transit Corporation ("NJ Transit") appeals the September 27, 2021 denial of its motion to dismiss the negligence claims of Cedric Galette pursuant to the doctrine of sovereign immunity. We affirm.

This controversy stems from an August 9, 2018 incident wherein a collision occurred between a bus owned and operated by NJ Transit and the personal vehicle of Julie McCrey in Philadelphia, Pennsylvania. Mr. Galette was a passenger in Ms. McCrey's vehicle and suffered various physical injuries as a result of the collision. He timely commenced this civil action by filing a *praecipe* for a writ of summons on August 7, 2020, and, ultimately, served both Ms. McCrey and NJ Transit. Thereafter, Mr. Galette filed a complaint containing claims sounding in negligence against both Ms. McCrey and NJ

Transit.[1] NJ Transit filed an answer with a new matter alleging, *inter alia*, that it was an "arm" of the State of New Jersey and that Mr. Galette's claims against it were barred by the doctrine of sovereign immunity. **See** Answer and New Matter, 6/15/21, at ¶ 28 ("NJ Transit and its subsidiary, NJ Transit Bus Operations, Inc., are arms of the State of New Jersey and are protected by the [s]tate[-]afforded governmental and sovereign immunities and, as such, [Mr. Galette's c]omplaint is barred and must be dismissed."). Thereafter, NJ Transit filed a motion to dismiss reiterating this particular claim.[2] Mr. Galette filed a response opposing NJ Transit's arguments.

On September 27, 2021, the trial court denied NJ Transit's motion to dismiss. On October 25, 2021, NJ Transit filed a timely notice of appeal to this Court. The trial court did not direct NJ Transit to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b) and none was filed. Nonetheless, the trial court submitted a Rule 1925(a) opinion expressing its belief that NJ Transit's appeal was improper and interlocutory pursuant to Pa.R.A.P. 311(b) (requiring a party to take certain actions to take an immediate appeal from an order sustaining venue, or personal or *in rem* jurisdiction). NJ Transit submits that the order was collateral and immediately appealable.

---

[1] Although Ms. McCrey is listed as an appellee in this proceeding, she has not participated in this matter. Accordingly, we will not discuss her further.

[2] It is well-established that "a defense of governmental immunity is an absolute defense and is non-waivable," thus, "it may be raised at any time[.]" *Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania*, 929 A.2d 1169, 1178 n.10 (Pa.Super. 2007).

NJ Transit has raised the following claims for our consideration:

1. Is the order denying NJ Transit's motion to dismiss on its defense of state sovereign immunity an appealable collateral order?

2. Did the trial court err, as a matter of law, in denying NJ Transit's motion to dismiss for lack of jurisdiction where NJ Transit, a foreign state entity, did not provide consent to be sued in another state and rightfully asserted its state sovereign immunity protections under the United States Constitution?

NJ Transit's brief at 4 (cleaned up; issues reordered for ease of disposition).

We begin our analysis by assessing whether the trial court's September 27, 2021 order is an appealable, collateral order pursuant to Pennsylvania Rule of Appellate Procedure 313. The appealability of an order pursuant to the collateral order doctrine is a question of law, over which our standard of review is *de novo* and our scope of review is plenary. *See Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 365 (Pa. 2021).

Rule 313 provides that "[a]n appeal may be taken as of right from a collateral order of a trial court or other government unit." Pa.R.A.P. 313(a). Thus, the collateral order doctrine is a "specialized, practical application of the general rule that only final orders are appealable as of right." *Price v. Simakas Co., Inc.*, 133 A.3d 751, 755 (Pa.Super. 2016). An order is considered "final and appealable" under the collateral order doctrine if: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed

- 3 -

right will be irreparably lost. *See Brooks*, *supra* at 370; Pa.R.A.P. 313(b) (same). If an order satisfies this test, then "an appellate court may exercise jurisdiction even though the order is not final. If the test is not met, however, and in the absence of another exception to the final order rule, there is no jurisdiction to consider an appeal of such an order." *Brooks*, *supra* at 370.

In *Brooks*, our Supreme Court addressed whether a decision denying a governmental party's assertion of the sovereign immunity defense meets the collateral order doctrine. Therein, the High Court concluded that a claim of sovereign immunity is: (1) "separable" from civil claims of negligence since it presents a "purely legal question" that can be resolved without "an examination of the merits of [the plaintiff's] negligence claims;" (2) "is too important to evade review before final judgment;" and (3) "irreparably lost if appellate review of an adverse decision on sovereign immunity is postponed until after final judgment." *Id*. at 371-73. Accordingly, it found that an order denying a party's petition for relief pursuant to the sovereign immunity doctrine was a collateral order that was immediately appealable as of right. *Id*. at 373 ("Subjecting a governmental entity, which claims it is immune, to the legal process undermines the purposes of sovereign immunity.").

Pursuant to *Brooks*, we find that the September 27, 2021 order denying NJ Transit's motion to dismiss is a collateral order that was immediately appealable as of right. Accordingly, our jurisdiction over this appeal is proper pursuant to Rule 313. Thus, we proceed to the merits.

In its substantive claim for relief, NJ Transit asserts the trial court erred in declining to dismiss based upon sovereign immunity. *See* Appellant's brief at 9 ("[NJ Transit] is an arm of the State of New Jersey who was hauled into a foreign [s]tate court without its consent."). Our standard of review is *de novo*, and our scope of review is plenary. *See Goldman v. Southeastern Pennsylvania Transp. Authority*, 57 A.3d 1154, 1170 (Pa. 2012).

Sovereign immunity is a venerable legal doctrine that has its origins in the old adage of the English common law that "the Crown could not be sued without consent in its own courts." *Alden v. Maine*, 527 U.S. 706, 715 (1999). After examining the relevant history and case law, the United States Supreme Court has concluded that this general legal principle was "universal" in terms of its recognition at the time that the United States Constitution was "drafted and ratified." *Id*. at 716. Specifically, the Court has recognized that the historical circumstances of the passage of the Eleventh Amendment clearly evince an intent "to preserve the States' traditional immunity from private suits." *See id*. at 724; *see also* U.S. Const., Amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). Specifically, "[t]he Eleventh Amendment confirmed that the [United States] Constitution was not meant to raise up any suits against the States that were anomalous and unheard of when the Constitution was adopted." *Franchise*

*Tax Board of California v. Hyatt*, 139 S.Ct. 1485, 1496 (2019) (cleaned up). However, the Court has also emphasized that "the bare text of the Amendment is not an exhaustive description of the States' constitutional immunity from suit." *Alden*, *supra* at 736.

Sovereign immunity often arises in the context of interstate lawsuits. In the landmark ruling of *Nevada v. Hall*, 440 U.S. 410 (1979), the High Court held that the question of "any one State's immunity from suit in the courts of another State" was "a matter of comity." Thus, it was not automatically incumbent upon one State to recognize the sovereign immunity of another State. *See also Flamer v. New Jersey Transit Bus Operations, Inc.*, 607 A.2d 260, 262 (Pa.Super. 1992) (citing *Hall*, *supra* at 425) ("[W]hether one [S]tate is required to accord sovereign immunity in its courts to another [S]tate is purely a question of comity and is not a constitutional mandate.").

In *Hyatt*, the Court revisited and explicitly overruled *Hall*:

Interstate sovereign immunity is . . . integral to the structure of the Constitution. Like a dispute over borders or water rights, a State's assertion of compulsory judicial process over another State involves a direct conflict between sovereigns. The Constitution implicitly strips States of any power they once had to refuse each other sovereign immunity, just as it denies them the power to resolve border disputes by political means. Interstate immunity, in other words, is implied as an essential component of federalism.

. . . .

[*Hall*] is irreconcilable with our constitutional structure and with the historical evidence showing a widespread preratification

- 6 -

understanding that States retained immunity from private suits, both in their courts and in other courts. We therefore overrule that decision.

**Hyatt**, **supra** at 1497-99. Thus, **Hall** no longer animates the contours of sovereign immunity and "States retain their sovereign immunity from private suits brought in the courts of other States."[3] **Id**. at 1492.

Although the State of New Jersey is not directly named as a defendant in this matter, it is well-established that sovereign immunity extends to "entities which are agents or instrumentalities of the [S]tate such that a suit brought against them would be, for all practical purposes, a suit against the [S]tate itself." **Goldman**, **supra** at 1171. NJ Transit maintains it is an instrumentality of the State of New Jersey. **See** Appellant's brief at 10-14.

At a basic level, the determination of whether a particular entity qualifies as an alter ego of a State for the purposes of sovereign immunity is a question of federal law that concomitantly relies upon a searching examination of state law provisions. **See Goldman**, **supra** at 1173. Interpreting the relevant precedents of the United States Supreme Court, the Pennsylvania Supreme Court has distilled this inquiry into six factors of "equal importance," namely: (1) the legal classification and description of the entity within the governmental structure of the State, both statutorily and under its caselaw;

_____

[3] The holding in **Franchise Tax Board of California v. Hyatt**, 139 S.Ct. 1485 (2019) did not include any discussion of the determinative issue in the instant appeal, *i.e.*, whether a particular entity qualifies as an instrumentality of a State for the purposes of sovereign immunity.

(2) the degree of control the State exercises over the entity; (3) the extent to which the entity may independently raise revenue; (4) the extent to which the State provides funding to the entity; (5) whether the monetary obligations of the entity are binding upon the State; and (6) whether the core function of the entity is normally performed by the State. *See id*. at 1179.

Rather than discuss Pennsylvania law, however, NJ Transit has relied entirely upon the jurisprudence of the U.S. Court of Appeals for the Third Circuit, which has previously concluded that NJ Transit qualifies as an instrumentality of the State of New Jersey for the purposes of sovereign immunity under its own three-part test.[4] *See Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018). It is well-established that the holdings of the Third Circuit are not binding upon this Court, even in the context of a question of federal law.[5] *See Werner v. Plater-Zyberk*, 799 A.2d 776, 782 (Pa.Super. 2002) ("[A]bsent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts, even when a federal question is involved."). Rather, such decisions have only

_____

[4] Specifically, the Third Circuit examines the following factors in determining whether an entity qualifies as an alter ego of state government: "(1) whether the payment of the judgment would come from the state; (2) what status the entity has under state law; and (3) what degree of autonomy the entity has." *Karns v. Shanahan*, 879 F.3d 504, 513 (3d Cir. 2018).

[5] Our Supreme Court has rejected identical attempts to render Third Circuit jurisprudence controlling in this context. *See Goldman v. Southeastern Pennsylvania Transp. Authority*, 57 A.3d 1154, 1169 n.12 (Pa. 2012).

persuasive value. *See Chiropractic Nutritional Associates, Inc. v. Empire Blue Cross and Blue Shield*, 669 A.2d 975, 980 (Pa.Super. 1995). NJ Transit is mistaken to the extent it suggests *Karns* or other holdings from the Third Circuit controls the result here. Nonetheless, *Karn* does offer significant clarification as to the issues at play and we considered it for its proper persuasive value.

The first element in Pennsylvania's six-part test entails an examination of NJ Transit's status under New Jersey law, which clearly evinces support for the conclusion that it should be considered an instrumentality of the State of New Jersey. *See* N.J.S.A. § 27:25-4 ("[NJ Transit] is hereby constituted as an instrumentality of the State exercising public and essential governmental functions, and the exercise by [NJ Transit] of the powers conferred by this act shall be deemed and held to be an essential governmental function of the State."). Similarly, the second factor regarding relative autonomy is also supportive of a finding that NJ Transit is an alter ego of the State's government. *See Karns*, *supra* at 518 (reviewing New Jersey statutes to document the "operational constraints" placed upon NJ Transit by the state government, which controls the appointment of its governing board, reviews and audits its expenditures, and possesses veto power over actions taken by its board and certain acquisitions). Finally, the sixth factor also supports the same conclusion, as NJ Transit's activities are explicitly identified as an "essential governmental function" of New Jersey. *See* N.J.S.A. § 27:25-4.

- 9 -

By contrast, however, the remaining three factors augur in favor of the opposite conclusion. Specifically, NJ Transit is independently empowered to raise revenue through several different avenues. *See* N.J.S.A. § 27:25-5(k), (n)-(o) (providing NJ Transit may generate revenue through the disposition of "real and personal property," by setting and collecting fares, rentals, fees, and other charges, and/or by depositing corporate revenues in interest-bearing accounts). Moreover, NJ Transit is funded from a "combination of federal, state, and local funds," such that "it is not entirely reliant on state funds[.]" *Karns*, *supra* at 516. Finally, New Jersey law provides that "[n]o debt or liability of the corporation shall be deemed or construed to create or constitute a debt, liability, or a loan or pledge of the credit of the State." N.J.S.A. § 27:25-17. Accordingly, "the [S]tate is under no legal or other obligation to pay NJ Transit's debts or to reimburse NJ Transit for any judgments that it pays." *Karns*, *supra* at 516. Thus, the third, fourth, and fifth factors do not support NJ Transit's alleged status as an instrumentality of New Jersey.

Where, as here, the six-factor test is not dispositive, we must reach a conclusion by inquiring as to whether allowing NJ Transit to be sued in this particular manner would "thwart the two principal purposes of the Eleventh Amendment," namely, "the protection of [New Jersey's] dignity as a sovereign [S]tate and the protection of [New Jersey's treasury] against involuntary depletion from suits brought by private persons." *Goldman*, *supra* at 1181. In this context, we are "mindful" that "state dignity is the paramount purpose

of the Eleventh Amendment." *Id*. at 1182 (citing *Federal Maritime Comm'n v. South Carolina State Ports Authority*, 535 U.S. 743, 769 (2002)).

*Goldman* is highly instructive on the merits of these related points of inquiry. Therein, the Pennsylvania Supreme Court considered whether it would offend the dignity or the finances of the Commonwealth to permit the Southeastern Pennsylvania Transportation Authority ("SEPTA") to be sued in a Pennsylvania state court pursuant to the Federal Employees Liability Act ("FELA").[6] Ultimately, the Court found a lawsuit naming SEPTA as a defendant would not offend Pennsylvania's sovereign dignity, reasoning as follows:

> In such a suit, the Commonwealth is not a named defendant, as SEPTA has been designated by the legislature of the Commonwealth as a distinct legal entity with the power to sue and be sued in its own capacity. Thus, it is not any purported negligent act of the Commonwealth at issue in a suit, but, rather, the alleged negligent act of SEPTA itself. Neither can the Commonwealth be joined as a defendant in any action against SEPTA since the Commonwealth has specifically repudiated any legal responsibility for obligations incurred by SEPTA; hence, having explicitly disclaimed all responsibility for any financial liability incurred by SEPTA, it may not be joined in a suit against SEPTA under our rules of civil procedure. *See* Pa.R.C.P. 1076.1, 2252(a)(1), (4) (allowing joinder by plaintiff or defendant in a civil action of only those parties which are solely liable to the plaintiff, liable to the joining party, or jointly or severally liable with the joining party on the plaintiff's cause of action). Further, the Commonwealth does not enter its appearance to defend a suit on SEPTA's behalf, and it does not otherwise participate in the litigation, as the legislature has explicitly placed the responsibility on SEPTA to manage all of its own legal affairs, which responsibility includes the defense of

---

[6] While *Goldman* was an intrastate legal dispute, it directly adjudicates the salient issue of whether an entity should be considered an "arm" of state government for the purposes of sovereign immunity under federal law.

any suits against it. In sum, then, SEPTA bears the sole and exclusive burden of any litigation against it in our state courts.

Because a suit against SEPTA in the courts of common pleas of this Commonwealth proceeds against SEPTA, alone, as a wholly independent entity without the involvement of the Commonwealth, the Commonwealth cannot, therefore, be subject to any decree or order of court as the result of such a suit. Thus, no right or interest of the Commonwealth will be affected by the outcome of a suit against SEPTA in our Commonwealth's courts, and so a suit poses no danger that the Commonwealth will be involuntarily subject to and controlled by the mandates of judicial tribunals, without its consent, at the instance of private parties.

*Goldman*, *supra* at 1183-84 (cleaned up).

We find the particulars of NJ Transit's status with respect to the State of New Jersey to be in complete parity with this analysis. NJ Transit is a distinct legal entity that is empowered to sue, and be sued, in a capacity that is independent from the State. *See* N.J.S.A. §§ 27:25-4(a), 27:25-5(a). To that end, NJ Transit is authorized "[t]o employ and retain legal counsel" at its own discretion and, thereby, manage its own legal affairs. *See* N.J.S.A. § 27:25-5(z). New Jersey has also disclaimed any and all financial responsibility as to the liabilities of NJ Transit. *See* N.J.S.A. § 27:25-17.

We discern no risk to the sovereign dignity of New Jersey in permitting a suit against NJ Transit to proceed. For the purposes of such legal disputes, it seems beyond cavil that NJ Transit operates as a "wholly independent entity" that cannot bind the State of New Jersey or otherwise place it in a position where it will be "subject to and controlled by the mandates of judicial tribunals," without its consent, "at the instance of private parties." *Goldman*,

*supra* at 1183.   Thus, the paramount consideration of the Eleventh Amendment does not support a finding that NJ Transit is a state instrumentality for the purposes of sovereign immunity.   *See id*. at 1183-84.

Likewise, we also find that any potential judgment against NJ Transit would have no discernible impact upon the New Jersey treasury.   While such an inquiry cannot be reduced to a formalistic assessment of "ultimate financial responsibility," the "controlling question is whether [the State] would be **legally** liable to pay" if a bevy of legal claims overwhelmed NJ Transit's ability to pay.   *Goldman*, *supra* at 1184 (emphasis in original) (citing *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 431-32 (1997)).   Comparatively, "the mere prospect that a [S]tate **might** render financial assistance to cover an unforeseen budgetary shortfall of an entity it created does not create a legal obligation of the [S]tate to pay."   *Id*. at 1184 (emphasis in original) (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 43-44 (1994)).   Overall, New Jersey bears no culpability with respect to the financial liabilities of NJ Transit.   *See* N.J.S.A. § 27:25-17.   Accordingly, this secondary factor also supports a conclusion that NJ Transit is not an instrumentality of the State of New Jersey.

Based on the foregoing analysis, we discern that Mr. Galette's lawsuit poses no threat to either the sovereign dignity or the state treasury of New Jersey.   Accordingly, we conclude that NJ Transit is not an arm of the State of

New Jersey and, thus, it is not entitled to the protections of sovereign immunity which it has asserted. **See Goldman**, **supra** at 1185.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2023