**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAMAR E. WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1126 EDA 2024 |

Appeal from the PCRA Order Entered March 27, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003539-2017

BEFORE: LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:         **FILED AUGUST 18, 2025**

Lamar E. Williams appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA). ***See*** 42 Pa.C.S.A. §§ 9541-9546. After our review, we affirm.

The PCRA court summarized the factual history of this case as follows:

On the evening of January 21, 2017, Debra Mason[,] Eden Assefa, Vondell Haynes[,] and Shavida Jones were working at the Lot K parking lot booth located at Pattison Avenue and Lincoln [F]inancial [Field] Way. At approximately 7:30 p.m., [Williams] entered the parking lot booth. [Williams] shoved an unidentified object into [] Haynes' back and told her not to move. [Williams] then shoved the object into [Mason's] back and demanded money from her. Although [Mason] and Haynes did not see the object, [Mason] testified that it was made of hard metal and felt like the barrel of a gun. After [Mason] gave [Williams] $620.00,

_____

[*] Former Justice specially assigned to the Superior Court.

[Williams] pushed [Mason] aside and looked for more money. [Mason] then fled the booth.

As she fled, [Mason] attempted to lock [Williams] in the booth. While attempting to lock the door, [Mason] and Haynes saw [Williams'] face through the booth window. However, an unidentified individual helped [Williams] to escape before [Mason] could lock the door.

Later that evening, [Mason] met detectives at South Detectives Police Station to discuss the robbery. On January 24, 2017, [Mason] identified [Williams] as the perpetrator via a photo array. [] Haynes also identified [Williams] as the robber in [] a photo array[.]

On January 19, 2017, two days before the robbery, Kasha Williams, [Williams'] sister and an employee of the same parking company, gave [] Haynes a ride home from work. During that ride, Haynes overheard a FaceTime phone conversation between Kasha [] and [Williams]. Although Haynes had never met [Williams], and did not identify his voice at the time, [Haynes] was able to match [Williams'] voice after the robbery.

PCRA Court Opinion, 7/22/24, at 2-4 (footnotes omitted).

Based on the January 21, 2017 incident, Williams was arrested and charged with robbery[1] and possession of an instrument of crime (PIC),[2] as well as theft, receiving stolen property, recklessly endangering another person, and conspiracy. Williams' first jury trial, conducted in November of 2018, resulted in a hung jury. Williams was tried a second time on July 15, 2019.

During Williams' second trial, the Commonwealth called Malcolm Gill, an investigative analyst for the Philadelphia District Attorney's Office, to testify.

---

[1] 18 Pa.C.S.A. § 3701(a)(1).

[2] *Id.* at § 907(a).

***See*** N.T. Jury Trial, 7/18/29, at 134. The Commonwealth asked Gill about his education, certifications, training, and the forensic tools he uses in his work before requesting the trial court qualify him "as an expert narrowly in the area of recognition and use of Cellebrite software[3] and recognition of Cellebrite reports." ***See id.*** at 134-40. The court allowed Williams' trial counsel the opportunity to cross-examine Gill on his qualifications, wherein Williams' counsel asked what continuing education is required of Gill to maintain his certifications, whether recertification entails a "testing of proficiency" as opposed to a training course, and whether he performs any cell site location analysis of cell phones as part of his work. ***Id.*** at 140-41. Williams' counsel ultimately did not object to Gill being deemed an expert witness. ***Id.*** at 141. The trial court then qualified Gill as an "expert in the area of Cellebrite software and Cellebrite reports." ***Id.***

The Commonwealth introduced a document during Gill's testimony, labeled Commonwealth's Exhibit 22, which Gill described the first page of as "an image that was extracted into a Cellebrite report, [which] looks like a text message attachment." ***Id.*** at 143. Gill testified that the image was "taken from the images page" and that the source of the image was iMessage. ***Id.*** at 143-44. When extracting data from a phone, Cellebrite, according to Gill, "will take what's there and doesn't change anything on the phone, and it

_____

[3] Cellebrite advertises itself as offering "the world's most advanced digital intelligence solutions, including digital forensics, extraction[,] and analysis." Cellebrite, Company Profile, https://cellebrite.com/en/about/company (last visited July 25, 2025).

basically presents what's there. It doesn't alter any user data or anything." *Id.* at 138.

The Commonwealth then presented the testimony of Detective David McAndrews, who participated in the investigation of Williams' case. *Id.* at 145-47. During his testimony, Detective McAndrews identified Exhibit 22 as an "[e]xtraction Report from Cellebrite [Universal Forensics Extraction Device (UFED)] Reports[ and] a data file containing an image." *Id.* at 160. He stated that, "according to the Cellebrite information and the UFED report, there's an attachment that was sent on January 31st, 2017 at 5:34 and three seconds p.m." *Id.* Detective McAndrews testified that the report identified the image as having been sent by phone number 267-408-XXXX. *Id.* When clicked on, the image opened up, and Detective McAndrews stated that he could "see the name Lamer E., half of a name A-M-S with a date of birth of 12-20, say, 1998, and there's a bar code where the information is written." *Id.* at 160-61. Following this testimony, the Commonwealth then moved Exhibit 22 into evidence and published it to the jury. *Id.* at 161.

When asked why Exhibit 22 was relevant to his investigation, Detective McAndrews explained that the phone number he referenced came from a contact in Kasha's phone with the name "Mar." *Id.* According to Detective McAndrews, there were 19 Facetime calls between this contact and Kasha Williams on January 19, 2017, and 16 Facetime calls on January 21, 2017. *Id.* at 162. On cross-examination, Detective McAndrews testified regarding his familiarity with cell site location, what relevance cell site location data has

- 4 -

for a police investigation, and how GPS tracking data differs from cell tower data. *Id.* at 170-174.

On July 19, 2019, a jury found Williams guilty of one count each of robbery and PIC. On January 17, 2020, the trial court sentenced Williams to five to ten years' incarceration on the robbery conviction and one year of probation on the PIC conviction. On January 26, 2020, Williams filed a post-sentence motion requesting an arrest of judgment or a new trial. The trial court did not rule on that motion.[4]

Subsequently, on October 25, 2020, Williams filed a PCRA petition, requesting the entry of an order denying his post sentence motion by operation of law and seeking to have his appellate rights reinstated *nunc pro tunc*. On March 24, 2021, the PCRA court granted Williams' PCRA petition in part, reinstating his appellate rights *nunc pro tunc*, and denied it in part as to the request for the entry of an order denying his post sentence motion.

On April 22, 2021, Williams filed a *nunc pro tunc* notice of appeal to this Court, initiating his first appeal. Williams' first appeal claimed that the trial court had erred in denying his motion in limine and overruling his objection to preclude testimony that identified him as the assailant, that the evidence was insufficient to sustain his conviction, and that the jury's verdict was against the weight of the evidence. On May 25, 2022, this Court rejected Williams'

---

[4] Pursuant Pa.R.Crim.P. 720, when a judge does not decide an optional post-sentence motion within 120 days or grant an extension, the motion is deemed denied by operation of law. *See* Pa.R.Crim.P. 720(B)(3)(a).

claims and affirmed the judgment of sentence. *See **Commonwealth v. Williams***, 279 A.3d 1282 (Pa. Super. 2022) (Table).

On October 20, 2022, Williams pro se filed the current PCRA petition, followed by a counseled amended PCRA petition on July 24, 2023. On March 27, 2024, the PCRA court dismissed Williams' petition. Williams filed a timely notice of appeal. Williams and the PCRA court have complied with Pa.R.A.P. 1925. Williams raises the following issue for our review: Did the [PCRA] court commit error when it dismissed [Williams'] PCRA petition where trial counsel was ineffective when he failed to object to improper expert testimony and second-hand reports which constituted inadmissible hearsay? Appellant's Brief, at 5.

We review the denial of PCRA relief by examining whether the PCRA court's conclusions are supported by the record and free from legal error. ***Commonwealth v. Johnson***, 289 A.3d 959, 979 (Pa. 2023). We defer to the factual findings of the post-conviction court, which is tasked with hearing the evidence and assessing credibility, and our standard of review over a PCRA court's legal conclusions is de novo. *Id.*

Williams' ineffectiveness claim is based on three arguments: trial counsel failed to object to (1) the introduction of Gill as an expert witness; (2) the Cellebrite report being introduced into evidence through Gill; and (3) Detective McAndrews testimony that focused on the cell phone extraction. *Id.* at 12.

To succeed on an ineffective assistance of counsel claim, an appellant must prove: (1) that his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Gibson*, 318 A.3d 927, 934 (Pa. Super. 2024) (citing *Commonwealth v. Solano*, 129 A.3d 1156, 1162-63 (Pa. 2015)). Counsel is presumed to have rendered effective assistance. *Commonwealth v Housman*, 226 A.3d 1249, 1260 (Pa. 2020). A failure to satisfy any prong of the ineffectiveness test requires a rejection of the claim. *Gibson*, 318 A.3d at 934. Boilerplate allegations or bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. *Id.*

Williams first argues that his trial counsel was ineffective "in failing to cross-examine Gill on [several] areas[,]" such as whether he had certain qualifications, whether he regularly updated his tools, whether he was certified to use his extraction device at the level he did, as well as other questions regarding his methodology and expertise or lack thereof. *See* Appellant's Brief, at 16-19.

Courts must apply a liberal standard when determining if a witness qualifies as an expert in a particular field. *Commonwealth v. Taylor*, 209 A.3d 444, 449 (Pa. Super. 2019) (citing *Miller v. Brass Rail Tavern, Inc.*, 664 A.2d 525, 528 (Pa. 1995)). To be qualified as an expert, the witness

- 7 -

"need not possess all of the knowledge in a given field but must only possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence[,] or experience." ***Taylor***, 209 A.3d at 449 (citation and internal quotation marks omitted).

Williams' argument fails because he cannot establish the first or third prong of his ineffective assistance of counsel claim. Gill testified as to his qualifications and experience in using Cellebrite technology. ***See*** N.T. Jury Trial, 7/18/29, 135-140 (Gill testifying that he has "three certifications from Cellebrite[,]" that he uses Cellebrite "[e]very day[,]" for his work, and that he has analyzed "close to [] 350" phones using Cellebrite). While Williams provides several questions his trial counsel could have asked Gill during voir dire, he does not develop his argument with regard to how Gill's potential answers to those questions would have altered the court's decision to deem him an expert "in the area of Cellebrite software and Cellebrite reports" under Pennsylvania's "liberal standard." ***See Taylor***, ***supra***. Therefore, because Williams has made only "[b]oilerplate allegations and bald assertions[,]" ***see Gibson***, ***supra***, that his counsel was ineffective for failing to ask Gill different questions, ***see*** Appellant's Brief, at 19 ("[i]n light of the fact that trial counsel did not ask these questions, he was ineffective"), his argument fails.

Williams next argues that his trial counsel erred in not objecting to the admission of the Cellebrite Report. ***See*** Appellant's Brief, at 16. Williams avers that his counsel should have objected to Gill authenticating the Cellebrite report because his testimony did not establish that he was the

technician who collected the data and produced the report.[5] *Id.* The report, therefore, according to Williams, was "hearsay that was prepared in furtherance of a criminal investigation." *Id.*

The Commonwealth first argues that the Cellebrite report is not hearsay because of the automated manner in which the report was generated. *See* Commonwealth's Brief, at 13 (citing *Commonwealth v. Wallace*, 289 A.3d 894, 904 (Pa. 2023)). Further, the Commonwealth claims, even if the report was hearsay, the reports are "non-testimonial, raw machine[-]created data" that do not implicate the Confrontation Clause. Commonwealth's Brief, at 13-14 (quoting *United States v. Hill*, 63 F.4th 335, 359 (5th Cir.)).[6]

Hearsay is defined as a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c)(1)-(2). Our evidentiary rules define a "statement" as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as

_____

[5] To the extent Williams' brief could be construed as raising a claim challenging the Commonwealth's authentication of the Cellebrite report, that claim is waived. Williams does not cite to Pennsylvania's rules of evidence regarding authentication, excerpts from the record below wherein the document was introduced, or any case law discussing authentication. Therefore, Williams did not "develop the issue in [a] meaningful fashion capable of review," and his potential claim is waived. *See Commonwealth v. Armolt*, 294 A.3d 364, 377 (Pa. 2023) (citation omitted); *see also* Pa.R.A.P. 2119(a).

[6] It is well-established that holdings of the federal courts are not binding upon this Court. *See Galette v. NJ Transit*, 293 A.3d 649, 655-56 (Pa. Super. 2023). Such decisions have only persuasive value. *Id.*

an assertion[,]" and define a declarant as "the person who made the statement." *Id.* at (a)-(b).

In *Wallace*, the Supreme Court of Pennsylvania considered whether data collected from a GPS ankle monitor constituted hearsay. 289 A.3d at 904. The Supreme Court held that, because the contested assertion—the GPS location data—was not made by a person but instead electronically generated, it could not constitute hearsay. *Id.* (citing *Commonwealth v. Davis*, 168 N.E.3d 294, 310 (Ma. 2021) (holding that, because "[c]omputer-generated records are created solely by the mechanical operation of a computer and do not require human participation[,] . . . they cannot be hearsay")). Additionally, our Supreme Court noted that its conclusion comported with the purpose of the hearsay rule. *Id.* at 907 (quoting *United States v. Lamons*, 532 F.3d 1251, 1264-65 (11th Cir. 2008) ("Although the right to subject witnesses to the crucible of cross-examination has some symbolic purpose in promoting the 'perception as well as the reality of fairness,' . . . [t]hese purposes are ill-served through confrontation of the machine's human operator.")).

Here, applying the rationale set forth by our Supreme Court in *Wallace*, the Cellebrite report is not hearsay, as it is not a statement made by a person, but instead generated by computer software. *See Wallace*, *supra.* As Gill testified, "Cellebrite will take what's there and . . . doesn't alter any user data or anything." N.T. Jury Trial, 7/18/29, at 138. The Cellebrite software extracts the data available on the phone at the time of its implementation

without alteration, akin to how the GPS data at issue in **Wallace** was collected by the monitoring device. Likewise, the Cellebrite software "cannot be cross-examined[,]" and the best way to challenge its "statements" is through authentication. **Wallace**, 289 A.3d at 907 (citing **Lamons** 532 F.3d at 1265). Therefore, Williams' second argument fails because the challenged report was not hearsay.[7] **See Gibson**, **supra**.

Williams last argues that his trial counsel was ineffective for failing to object to Detective McAndrews' testimony "as an expert witness[,]" because there was no foundation laid to establish Detective McAndrews as an expert in the area of cell phone and cell tower technology, and Detective McAndrews himself stated that he was "not an expert in the field" of this technology. Appellant's Brief, at 19 (quoting N.T. Jury Trial, 7/18/19, at 173).

As pointed out by the PCRA court, the answers Detective McAndrew provided regarding cell phone and tower technology, as well as GPS tracking, were in response to cross-examination by Williams' trial counsel. **See** N.T. Jury Trial, 7/18/19, at 170-74. It goes without saying that Williams' counsel cannot be faulted for failing to object to answers provided in response to his own questions. **See Johnson**, 289 A.3d at 979 ("With respect to the

---

[7] The PCRA court reached the same conclusion under a different rationale. **See** PCRA Court Opinion, at 7 (reasoning that Cellebrite report was not hearsay under the business records exception). However, "[i]t is well[-]settled that an appellate court has the ability to affirm a valid judgment or verdict for any reason appearing as of record." **Commonwealth v. Allshouse**, 36 A.3d 163, 182 (Pa. 2012) (quoting **Commonwealth v. Parker**, 919 A.2d 943, 948 (Pa. 2007) (internal quotations omitted)).

reasonable basis prong, we have explained that courts should not inquire as to whether there were other, more logical courses of action counsel could have pursued; rather, the appropriate question is whether counsel's decision had any reasonable basis.") (citation omitted)).[8]  Therefore, Williams' last claim also fails.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/18/2025

_____

[8] While Williams' claim would have been more at least somewhat more tenable had he argued that his counsel was ineffective for asking such questions of Detective McAndrews in the first place, "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant." **Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (quoting **Coulter v. Ramsden**, 94 A.3d 1080, 1088 (Pa. Super. 2014)).